## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## SPRINGFIELD DIVISION

| | |
|---|---|
| WALTER HOLMICH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 16-CV-3023 |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

## OPINION

**SUE E. MYERSCOUGH, U.S. District Judge.**

Petitioner Walter Holmich has filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1). Petitioner asserts that his trial counsel provided ineffective assistance by failing to gather evidence of and develop the argument that John Stanton, not Petitioner, owned the companies that were engaged in the fraud and took the lion's share of the proceeds of the fraud. Petitioner asserts that, had counsel done so, the Court would have likely sentenced him to a sentence at the low end of the sentencing guideline range. Because

Petitioner cannot show that his sentence was affected by the alleged deficient performance, Petitioner's Motion is DENIED.

## I. BACKGROUND

In June 2011, Petitioner and two co-defendants were charged by indictment with four counts of wire fraud. See United States v. Holmich, Central District Illinois Case No. 11-30028 (hereinafter, Case No. 11-30028), Indictment (d/e 1). On May 3, 2012, the jury was selected, and trial was set to begin on May 9, 2012.

On May 9, 2012, Petitioner entered an open plea of guilty to all four counts of wire fraud. See Case No. 11-30028, May 9, 2012 Text Order; May 9, 2012 Tr. (d/e 101). The Government outlined the evidence in the case in support of the factual basis. Specifically, Petitioner devised a scheme using his companies, including WH Logistics, Inc. and ISWS, Inc., to obtain government contracts. May 2012 Tr. at 19. Petitioner's companies were run out of Tampa, Florida and operated as government procurement companies. Id.

Once Petitioner's companies won the government contract, Petitioner's employees, co-defendants Ronnie Hawker and Lavada Lyons, found subcontractors who would provide the product to the

government. May 2012 Tr. at 19. After the products were delivered, the governmental entities paid Petitioner's companies but Petitioner's companies did not pay the subcontractors. See Id. at 20-32. The Government detailed the evidence that would have been presented at trial regarding ten specific victims. Id. at 20-33. In all, Petitioner, Lyons, and Hawker caused a loss of more than $2.5 million dollars through the scheme. Id. at 19. Petitioner used the money to pay a more than $4,000-a-month mortgage and to buy various automobiles. Id. Petitioner agreed that he did what the Government said he did. Id. at 35.

The Probation Office prepared a Revised Presentence Investigation Report (PSR). Case No. 11-30028 (d/e 87). The PSR found that the amount of loss totaled over $4.5 million. PSR ¶ 33.

As is relevant to Petitioner's claim, the PSR noted that Petitioner became associated with John Stanton in the early 1990s. PSR ¶ 11. Stanton operated numerous companies in the Tampa, Florida area and Petitioner began working for Stanton at some unknown time. Id. During the course of Petitioner's association with Stanton, Petitioner began operating businesses, although various individuals stated that Stanton "was the money

and decision-maker behind the companies." Id. According to the PSR, Petitioner and Stanton incorporated ISWS, Inc. on May 3, 2002 and were listed as directors on the Articles of Incorporation. Id. Petitioner incorporated WH Logistics, Inc., on January 24, 2005 and listed Hawker as the registered agent, Petitioner as the chief executive officer, and James F. Butterfield as the director. Id. Butterfield was the company's maintenance man, and he had no knowledge he was listed as an officer of the company. Id.

Beginning no later than August 2005, Petitioner and co-defendants Hawker and Lyons devised a scheme to defraud subcontractors throughout the United States of money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions. PSR ¶ 12. Petitioner, through the companies, obtained a government contract, secured a subcontractor to fulfill the contract, and then failed to pay the subcontractor. PSR ¶ 14. To elicit subcontractors, Petitioner, Hawker, and Lyons provided false references to the subcontractors. PSR ¶ 13.

The money paid by the government under the contracts to Petitioner's companies was quickly transferred out of company

accounts and moved to Petitioner's bank account for Victoria Carriages, an automobile dealership Petitioner operated.  PSR ¶ 16.  The money was spent on automobiles, mortgage payments, and other items.  Id.  However, co-defendant Hawker believed that Stanton controlled the purse strings of all of Petitioner's companies.  Id.  Petitioner issued company checks to Stanton or Stanton's various other companies on a regular basis, placing Petitioner's companies in financial distress.  Id.  This led to Petitioner's companies closing due to lack of money.  Id.  The Probation Office calculated Petitioner's advisory guideline range as 108 to 135 months' imprisonment.  PSR ¶ 99.

On November 26, 2012, this Court held the sentencing hearing.  Case No. 11-30028, November 26, 2012 Tr. (d/e 102).  Both co-defendants testified.  Lyons testified that she worked for Petitioner's companies as a purchasing agent.  Petitioner was her boss "and then he was like [her] dad."  Nov. 2012 Tr. at 14.  On cross-examination by Petitioner's attorney, Lyons testified that she thought Petitioner and Stanton were partners.  Id. at 20.  Lyons knew that Petitioner owned certain companies and she thought Stanton owned the company named Valkyrie.  Id.  She did not

know the "ins and outs of those companies" and all she knew was that Petitioner was her boss and Stanton would "come and go as he please[d]." Id.

Hawker also testified at the sentencing hearing. On cross-examination by Petitioner's attorney, Hawker testified that at one point he thought Stanton controlled the purse strings of all of Petitioner's companies. Nov. 2012 Tr. at 36. Petitioner told Hawker that Stanton would turn on the computer, see $100,000, and ask for a check for $50,000. Id. at 36-37. Hawker noted, however, that when one looked at all of the contracts to see where the money went, Hawker believed only $90,000 went to Stanton. Id. at 37.

Nonetheless, Hawker agreed that he told investigators that company checks were issued to Stanton or Stanton's various companies on a regular basis. When asked whether that put Petitioner's various companies in financial distress, Hawker testified that was what Petitioner told him. Nov. 2012 Tr. at 37. Two victims of the fraud also testified. Id. 40-44.

The Government asked the Court to sentence Petitioner to 130 months' imprisonment. The Government argued that

Petitioner stole from company after company and used the money to build his Tampa, Florida house, which had a six-car garage, a pool, and a Koi pond. Nov. 2012 Tr. at 45. Petitioner also drove fancy cars. Id. at 46. In addition, Petitioner took advantage of everyone around him, including Hawker and Lyons, and used them to protect himself. Id. at 45. Finally, the Government asserted that Petitioner's actions caused significant harm to the subcontractor companies that were never paid. Id. at 46.

Petitioner's counsel argued that the ring leader in the case was Stanton, not Petitioner. Nov. 2012 Tr. at 48. According to defense counsel, Petitioner was either an idiot or the puppet of Stanton because money would come into the business and Stanton would advise Petitioner where the money would be sent. Defense counsel argued that Petitioner built the Florida home referenced by the Government prior to ever meeting Stanton. Id. at 49. Due to Petitioner's dealings with Stanton, however, Petitioner took mortgages out on his own properties and put money into the businesses, and Stanton then moved the money around. Id. Defense counsel argued that the reason the subcontractors did not get their money was not due solely to Petitioner but because

Stanton was in charge of the purse strings. Id. at 50. According to counsel, Petitioner was "the first and largest debtor to Mr. Stanton in terms of the original victim of this case." Id. at 51. Defense counsel asked for a sentence of 120 months' imprisonment.[1]

During his allocution, Petitioner stated that the reason he was there was because of Stanton. Nov. 2012 Tr. at 53.

The Court sentenced Petitioner to 130 months' imprisonment, stressing the need for the sentence to reflect the seriousness of the offense. Nov. 2012 Tr. at 54. The Court noted that the small businesses that were victims of Petitioner's crimes suffered greatly as a result of Petitioner's acts. The Court also stated:

> Quite frankly, Mr. Holmich, I'm tempted to depart upwards in this case. But you have cooperated. And the government has not recommended that I do so. But you operated these companies on the backs of your employees who depended on you. You've heard how they felt, how betrayed they have been.
>
> In addition, I find that you actually continued on your crime spree after you were released.

---

[1] The Government advised the Court that Stanton was awaiting a federal trial in Tampa, Florida on income tax evasion charges. Tr. 52. Stanton has since been convicted and sentenced to 10 years in prison. See Gov't Resp. at 7 (d/e 3).

> Nonetheless, you have no criminal history. You've taken responsibility. You're 68, married, and a Vietnam veteran who suffers from PTSD, high blood pressure, high cholesterol and Type II diabetes. Your medical issues appear to be under control at this time and will certainly be treated in Bureau of Prisons.

Nov. 2012 Tr. at 55. The Court did not mention the arguments pertaining to Stanton's role in the offense.

Petitioner appealed, but his appointed counsel on appeal—who was not Petitioner's trial counsel—asserted that any appeal would be frivolous and moved to withdraw under <u>Anders v. California</u>, 386 U.S. 738 (1967). See <u>United States v. Holmich</u>, 563 F. App'x 483 (7th Cir. 2014). One of the potential challenges considered by the Seventh Circuit was whether Petitioner could challenge the reasonableness of his sentence in light of the district court's failure to comment on Petitioner's mitigating argument that Stanton was the true mastermind behind the fraudulent scheme. <u>Id.</u> at 485. The Seventh Circuit agreed with counsel, however, that "any such challenge would be doomed" because the district court, when discussing the sentencing factors, emphasized the seriousness of the offense, Petitioner's history and characteristics, and the absence of any criminal history. <u>Id.</u> The Seventh Circuit

found that Petitioner's argument about his culpability relative to Stanton's was undeveloped, as counsel did not submit a sentencing memorandum and counsel's comments at the hearing failed to specify how Petitioner was less culpable or why any lesser culpability merited a more lenient sentence.  Id.  The Seventh Circuit concluded that the district court "thoroughly explained the sentence and meaningfully considered the § 3553(a) factors and so the sentence is procedurally reasonable even though the court passed over [Petitioner's] undeveloped mitigating argument."  Id.

## II. PETITIONER'S MOTION

Focusing on the language in the Seventh's Circuit's opinion, Petitioner now claims that defense counsel was ineffective for failing to develop the sentencing argument that Stanton was the more culpable individual, that Stanton owned the companies engaged in the fraud, and that Stanton took the lion's share of the money.  Petitioner argues that had his attorney secured the banking records, those records would have shown that, as soon as a payment came in from the government, the vast majority of the money was transferred to Stanton's accounts, to which Petitioner did not have access.  Petitioner also asserts that his attorney

should have submitted proof that Petitioner constructed his home in 2002, later mortgaged his home, and deposited the proceeds of the loan into the accounts of Stanton-operated companies. Petitioner claims the bank statements, which were turned over to the Government and never returned, would show the large withdrawals or transfers from Stanton-owned companies to unrelated entities controlled by Stanton.

Petitioner admits that he lied to the victims, took the remaining money Stanton left in the company coffers, and perpetuated the fraud orchestrated by Stanton.  He argues, however, that if the Court had known of Stanton's role, the Court would have sentenced Petitioner to the low end of the guideline range.  Petitioner requests some limited discovery to secure the evidence he references.  Petitioner also asks for an evidentiary hearing.

The Court finds that neither discovery nor an evidentiary hearing are necessary.  As discussed below, even if the documents Petitioner seeks show what he purports them to show, Petitioner cannot demonstrate any prejudice.  Moreover, a hearing is not required because "the motion, files, and records of the case

conclusively show that the prisoner is entitled to no relief." Hutchings v. United States, 618 F.3d 693, 699-700 (7th Cir. 2010) (quotation omitted).

### III. ANALYSIS

A person convicted of a federal crime may move to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Relief under Section 2555 is an extraordinary remedy because a Section 2255 petitioner has already had "an opportunity for full process." Almonacid v. United States, 476 F.3d 518, 521 (7th Cir. 2007). Post-conviction relief under Section 2255 is therefore "appropriate only for an error of law that is jurisdictional, constitutional, or constitutes a fundamental defect which inherently results in a complete miscarriage of justice." Harris v. United States, 366 F.3d 593, 594 (7th Cir. 2004) (quotation omitted). In considering a Section 2255 motion, the Court reviews the evidence and inferences drawn from the evidence in the light most favorable to the Government. Carnine v. United States, 974 F.3d 924, 928 (7th Cir. 1992).

To succeed on a claim of ineffective assistance, a Section 2255 petitioner must show: (1) that his attorney's performance fell

below an objective standard of reasonableness; and (2) that he suffered prejudice as a result. Wyatt v. United States, 574 F.3d 455, 457-58 (7th Cir. 2009) (citing Strickland v. Washington, 466 U.S. 668, 687-88 (1984)). The first prong is known as the "performance" prong, and the second is known as the "prejudice" prong. Id.

Failure to prove either prong is fatal to a claim of ineffective assistance. Chichakly v. United States, 926 F.2d 624, 630 (7th Cir. 1991); see also Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice … that course should be followed."). To satisfy the prejudice prong, a petitioner must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694; see also Gentry v. Sevier, 597 F.3d 838, 851 (7th Cir. 2010). A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

Here, no reasonable probability exists that the result of Petitioner's sentencing would have been different had Petitioner's

counsel further developed the evidence regarding Stanton. As the recitation of the facts cited above shows, the Court was apprised of Petitioner's contention that Stanton was the mastermind behind the scheme. The PSR included such information about Stanton. Both Lyons and Hawker testified about Stanton's purported role in the offense. Defense counsel argued that Stanton was the mastermind and the one who benefited the most from the scheme.

Courts generally decline to find prejudice in a trial counsel's failure to argue certain evidence in mitigation when the evidence was before the sentencing court. See, e.g., United States v. Smith, No. 13 C 7709, 2014 WL 2459671, at *7 (N.D. Ill. 2014) (finding the details of the defendant's mental health history were included in the PSR and, while the judge did not mention the defendant's mental health, she was clearly aware because she recommended to BOP that the defendant receive mental health counseling). The evidence was before the Court even though the Seventh Circuit described defense counsel's arguments as undeveloped.

Perhaps this Court should have commented on the mitigation argument and specifically indicated the weight given thereto. Nonetheless, as the sentencing transcript makes clear, the Court

specifically considered imposing an above-guideline sentence but chose to impose 130 months' imprisonment based on the seriousness of the offenses, the harm to the small businesses who were victims of the crime, Petitioner's betrayal of his employees, and Petitioner's continuation of the crime spree following his pretrial release.  The Court also took into consideration the mitigating factors that Petitioner had no criminal history, took responsible for his crimes, was 68 years old, was married, and was a Vietnam veteran who suffered from PTSD.  Tr. 54-55.  No reasonable probability exists that additional, specific evidence regarding Stanton's role in the offense would have resulted in a reduced sentence in this case.

In fact, even if defense counsel had more fully developed the argument that Stanton was the true mastermind and beneficiary of the fraud, this Court would still have imposed the same sentence. The evidence to which Petitioner refers does not alter the evidentiary picture that was in front of this Court at sentencing and does not undermine the fairness or integrity of Petitioner's sentence.   See, e.g., Johnson v. United States, No. 11-CV-580-NJR, 2016 WL 1394232, *10 (S.D. Ill. Apr. 4, 2016) (finding that

the new evidence submitted during the habeas proceedings was not significantly different from what was before the sentencing judge and, given the sentencing judge's comments at sentencing, was unlikely to have "tipped the scales" in the petitioner's favor and resulted in a lesser sentence), appeal filed. The Court was well-aware that Petitioner claimed that Stanton was purportedly the mastermind, controlled the purse strings, and benefitted more greatly from the fraud. The Court imposed the sentence it deemed appropriate given all of the circumstances.

In sum, Petitioner does not satisfy the prejudice prong required for the claim of ineffective assistance in his Section 2255 motion to proceed. The briefing and record conclusively establish that Petitioner did not suffer prejudice from his attorney's alleged ineffectiveness, and no evidentiary hearing is warranted.

### IV.   CONCLUSION

For the reasons above, the Court denies Petitioner Walter Holmich's Section 2255 motion on the merits. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (d/e 1) is DENIED.

Because Petitioner has not made a substantial showing of the

denial of a constitutional right, the Court also denies a certificate of appealability under Rule 11(a) of the Rules Governing Section 2255 Proceedings.  See 28 U.S.C. § 2253(c)(2).

This case is closed.

ENTER:  September 22, 2016

FOR THE COURT:

                                s/Sue E. Myerscough
                              SUE E. MYERSCOUGH
                              UNITED STATES DISTRICT JUDGE